UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | **ORDER** |
| OMAR JAATA, | 18 Cr. 162 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

On November 29, 2018, Defendant Omar Jaata pleaded guilty to mail fraud in

violation of 18 U.S.C. § 1341.  (Dkt. No. 34)  Pending before the Court is Jaata's motion to

withdraw his guilty plea.  (Dkt. No. 51)  Jaata contends that he is innocent, that he had no intent

to defraud the federal government, and that the Government has not provided compelling

evidence of his guilt.  (Id. at 2-3)  Jaata further contends that his guilty plea was not knowing and

voluntary because his lawyer – whom he argues provided ineffective assistance – did not review

the plea agreement with him.  Jaata claims that he did not understand that he was pleading guilty

to a felony and that he could be required to pay restitution as a result of his guilty plea.  (Id. at 3-

4)

For the reasons stated below, Jaata's motion to withdraw his guilty plea will be

denied.

## BACKGROUND

I.    **FACTUAL ALLEGATIONS**

Beginning in or about September 2010, Jaata worked at the New York City

Human Resources Administration ("HRA") as an Eligibility Specialist II.  (Cmplt. (Dkt. No. 1)

¶ 12)  In that role, he determined and verified initial and continuing eligibility for individuals

receiving public assistance benefits, including the federally-funded Supplemental Nutrition Assistance Program ("SNAP"), commonly referred to as "food stamps."  (Id. ¶¶ 9, 11, 12) Qualified recipients of SNAP are given an EBT card loaded with monetary benefits that the authorized user can access with an assigned Personal Identification Number ("PIN").  (Id. ¶ 11) Jaata had the ability to award "single issuance" SNAP benefits to expedite benefits for individuals with a documented, urgent need.  (Id. ¶ 12)

On November 21, 2014, February 25, 2016, and November 28, 2016, Jaata awarded a purported applicant approximately $973 in SNAP benefits to three separate accounts linked to his home address or P.O. box, where the EBT card was mailed.  More than $14,000 worth of benefits was added to these three accounts, and subsequently spent.  (Id. ¶¶ 13-15, 18, 20-21)  Surveillance video and other records from a store in Harlem show Jaata making purchases with EBT cards associated with two of these three accounts.  (Id. ¶¶ 19-20)

On April 22, 2016, Jaata awarded SNAP benefits to an account for which his spouse accessed the benefits hotline.  Jaata was seen on video surveillance using the EBT card associated with this account, into which a total of $10,676 in benefits was loaded.  (Id. ¶ 22)

On another occasion, Jaata awarded an account $973 in SNAP benefits by using an override function after being warned that the Social Security number Jaata was using belonged to someone other than the account holder.  The EBT cards for that account were sent to an apartment in the same building as Jaata's home address, and to another address Jaata had used to access EBT cards to which he had added funds.  (Id. ¶ 23)

The Government contends that, in total, Jaata created and/or used approximately twenty-four accounts to effectuate EBT fraud, stealing a total of approximately $142,253 in public assistance benefits.  (Id. ¶¶ 10, 17)

The Complaint in this action was filed under seal on November 21, 2017.  (Dkt. No. 1)  Jaata was arrested and presented before Magistrate Judge Freeman on November 28, 2017.  (Dkt. No. 4)  On February 26, 2018, a grand jury returned a five-count indictment charging Jaata with (1) conspiracy to commit mail and wire fraud; (2) mail fraud; (3) wire fraud; (4) theft of public funds; and (5) aggravated identity theft.  (Indictment (Dkt. No. 11))  Jaata was arraigned on the Indictment on March 1, 2018; he pleaded not guilty to all charges.

On August 17, 2018, Jaata moved to suppress certain post-arrest statements he had made during a video-recorded interrogation on November 28, 2017.  (Dkt. No. 23)  The Government filed an opposition brief on September 25, 2018.  (Dkt. No. 31)  While the motion was pending, Jaata decided to change his plea to guilty.

## II.     JAATA'S GUILTY PLEA

On November 29, 2018, pursuant to a plea agreement, Jaata pled guilty to Count Two of the Indictment, and agreed to forfeit $95,000.  At the Rule 11 hearing, Jaata was sworn in, and told that if he answered any of the Court's questions falsely, he could be subjected to another prosecution for perjury or for making a false statement.  (Plea Tr. (Dkt. No. 34) at 2)

The Court asked Jaata to confirm that he understood that one purpose of the change of plea hearing was "to make sure that [he is] pleading guilty because [he is], in fact, guilty and not for some other reason."  Jaata replied, "Yes, your Honor."  (Id. at 3)  The Court made clear that Jaata should make sure that he understood every question before he answered, and to consult with his attorney as necessary:  "If you don't understand any of my questions or you want to consult with Mr. Nooter at any time, please say so because it's important that you understand every question before you answer."  (Id.)  The Court also asked questions designed to

determine whether Jaata was competent to enter an informed plea, and concluded that Jaata was in fact competent.  (Id. at 4-5)

The Court also confirmed with Jaata – who has a master's degree in criminal justice – that he understood that Count Two of the Indictment charged him "with committing mail fraud," and that the Government was alleging that Jaata "used the mails in furtherance of a scheme to defraud the Supplemental Nutrition Assistance Program commonly known as SNAP." (Id. at 5)

This Court also confirmed that Jaata had had sufficient time to discuss his case with his attorney, Thomas Nooter, and that Jaata was satisfied with Nooter's representation:

THE COURT: Have you had enough time to discuss your case with Mr. Nooter?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed with him the charges against you, as well as your intention to plead guilty to Count Two?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you discussed with him any possible defenses you might have to that charge, as well as all the facts about your involvement in this matter?

THE DEFENDANT: Yes, your Honor.

THE COURT: And has Mr. Nooter told you about the consequences of pleading guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you satisfied with Mr. Nooter's representation of you?

THE DEFENDANT: Yes, your Honor.

(Id. at 5-6)

This Court carefully reviewed with Jaata each of the rights he would be giving up if he entered a guilty plea:

THE COURT: I now must explain certain constitutional rights that you have. These are rights you would be giving up if you enter a guilty plea. Please listen carefully to what I'm about to say. If you don't understand something, stop me and either myself or Mr. Nooter will explain the matter to you more fully.

THE DEFENDANT: Thank you, your Honor.

THE COURT: Under the Constitution and laws of the United States, you have a right to a speedy and public trial by a jury on the charges against you which contained in the indictment. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If there were a trial, you would be presumed innocent and the Government would be required to prove you guilty by competent evidence and beyond a reasonable doubt. You would not have to prove you were innocent at a trial. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If there were a trial, a jury composed of 12 people selected from this District would have to agree unanimously before you could be found guilty. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you decide to go to trial, at that trial and at every stage of your case, you would have the right to be represented by an attorney, and if you could not afford one, an attorney would be appointed to represent you at government expense and at no cost to you.

THE DEFENDANT: Yes.

THE COURT: If you retained a lawyer and you ran out of money, an attorney would be appointed to continue to represent you and to handle your case all the way through trial and not just for purposes of a guilty plea. So your decision to plead guilty should not depend on whether you can afford a lawyer. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If there were a trial, you would have the right to see and hear all of the witnesses against you, and your attorney could cross-examine them. You would have the right to have your attorney object to the government's evidence and offer evidence on your behalf, if you so desired. You'd have the right to have subpoenas issued to compel witnesses to testify in your defense. Do you understand that?

THE DEFENDANT: Yes, your Honor.

5

THE COURT: If there were a trial, you'd have the right to testify, if you wanted to, but no one could force you to testify if you did not want to.  Furthermore, no inference or suggestion of guilt could be drawn if you chose not to testify at a trial.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you were convicted at a trial, you would have the right to appeal that verdict to a higher court.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Even now, as you are entering this plea, you have the right to change your mind, plead not guilty and go to trial on the charges contained in the indictment.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty, and if I accept your guilty plea, you will give up your right to a trial and the other rights I just discussed, other than the right to a lawyer, which you have regardless of whether or not you plead guilty.

If you plead guilty, I will enter a judgment of guilty and sentence you on the basis of your plea, after I have considered a presentence report and whatever submissions I receive from Mr. Nooter and the prosecutor.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty, you will also have to give up your right not to incriminate yourself because I will ask you questions about what you did in order to satisfy myself that you are guilty as charged in Count Two, and you will have to admit and acknowledge your guilt.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

(Id. at 6-9)

The Court then listed the elements of the mail fraud offense charged in Count

Two:

Count Two of the Indictment charges you with committing mail fraud.  In order to convict you, the Government would have to prove the following beyond a reasonable doubt:

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises;

Second, that you knowingly and willfully participated in this scheme or artifice to defraud with knowledge of its fraudulent nature and with the specific intent to defraud;

And, third, that in executing the fraudulent scheme, you used or caused the use of the U.S. mails.

(Id. at 9-10)

The Court then advised Jaata of the consequences of the charge:

Count Two carries a maximum term of imprisonment of 20 years and a maximum term of supervised release of three years; also, a maximum fine of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss resulting from the offense, whichever is greatest. Also, there is a mandatory $100 special assessment or fine that I'm required to impose.

. . . .

As part of your sentence, I can also order you to make restitution to anyone that was injured as a result of your criminal conduct, and I can also order you to forfeit certain property to the Government.  Do you understand that?

(Id. at 10-11)

The Court also warned Jaata that "[b]eing convicted of a felony" had other

consequences:

Being convicted of a felony may have other consequences, such as the loss of licenses or the right to possess a firearm.  If you are a citizen of the United States, you could lose your right to vote.  If you're not a citizen of the United States, you will likely lose your right to remain in the United States, and you may be deported.  This is not a full list of the consequences of a felony conviction, but these are examples.  Do you understand that?

(Id. at 11)

The Court also allocuted Jaata as to his knowledge of the Sentencing Guidelines:

THE COURT: There are Sentencing Guidelines I'm required to consult in order to determine an appropriate sentence in your case.  Have you talked with Mr. Nooter about the Sentencing Guidelines?

THE DEFENDANT: Yes, your Honor.

THE COURT: You'll understand I'll not be able to determine what the recommended sentence is under the guidelines until after a presentence report has been prepared, and

you and the government have had a chance to comment on that report. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You should understand that after I determine what the guidelines recommend for sentence and determine whether a departure from that guidelines' range, whether upwards or downward, is called for, I will then determine what an appropriate sentence is in your case, having in mind not only the sentencing guidelines, but all of the factors set forth in the sentencing statute, including the need for the sentence imposed to reflect the seriousness of the offense, the need to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT:  You should understand that if your attorney, or anyone else, has attempted to estimate or predict what your sentence will be, that their estimate or prediction could be wrong.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: No one, not even your attorney or the prosecutor can, nor should, give you any assurance of what your sentence will be.  Your sentence cannot be determined until the presentence report is completed and I have ruled on any challenges to the report, determined whether I believe there are grounds to depart, whether upwards or downward, from the guidelines[] range and otherwise determine what an appropriate sentence is in your case.  Do you understand this?

THE DEFENDANT: Yes, your Honor.

THE COURT: You should fully understand that even if your sentence is different from what your attorney, or anyone else, told you it might be, or if it is different than what you expect, you will still be bound by your guilty plea, and you will not be allowed to withdraw your plea of guilty?  Do you understand that?

THE DEFENDANT: Yes, your Honor.

(Id. at 11-13)

During the Rule 11 proceeding, Jaata also confirmed that he had signed an Advice

of Rights form and his plea agreement.  (Id. at 2-3)  The Advice of Rights Form states:

I understand the nature of the charges against me, my constitutional rights, and the punishment that could be imposed by the Court upon my plea of guilty, including:  any maximum and mandatory minimum terms of imprisonment; the effect of any term of

supervised release that may be imposed; the possibility of an order of forfeiture; the possibility of an order of restitution if any financial injury was caused by the offense; the fact that the Court must consider any applicable sentencing guidelines as well as the other factors enumerated in Title 18, United States Code, Section 3553(a), in imposing sentence; and the fact that the Court may depart from the sentencing guidelines in some circumstances.

(Jaata Advice of Rights Form (Dkt. No. 62) at 1)  The Advice of Rights form also states:  "My decision to plead guilty is freely and voluntarily made."  (Id.)

In signing the Advice of Rights form, Jaata affirmed the following:

I am pleading guilty because after discussing the case with my lawyer I believe that I am guilty.  I am satisfied with how my lawyer has represented me.

I have had a full opportunity to discuss with my lawyer whether there are any meritorious defenses to the count or counts to which I am pleading guilty.  I understand that, by pleading guilty, I am giving up the right to assert any such defenses. . . .

I have read and fully understand the foregoing statement.

(Id. at 2)

Jaata also signed a plea agreement on November 29, 2018 that describes Count Two of the Indictment, stipulates to a Guidelines offense level of 11, a Criminal History Category of I, a Guidelines imprisonment range of 8 to 14 months' imprisonment, and a fine range of $4,000 to $40,000.  (Jaata Plea Agmt. (Dkt. No. 63) at 1-2)  In signing the plea agreement, Jaata "acknowledge[d] that he has accepted this Agreement and decided to plead guilty because he is in fact guilty."  (Id. at 4)  With respect to restitution, the plea agreement states:  "the Court must order restitution . . . in an amount to be specified by the Court in accordance with Title 18, United States Code, Sections 3663, 3663A, and 3664."  (Id. at 1-2)

The Court allocuted Jaata as to his knowledge and understanding of his plea agreement:

THE COURT:  I have been given a plea agreement, which I've marked as Exhibit 2 to these proceedings.  You told me a moment ago that you signed it.  Did you discuss the plea agreement with Mr. Nooter before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you read the plea agreement before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you fully understand all of the terms of the plea agreement before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Does this agreement constitute your complete and total understanding of the entire agreement between you and the United States government as to this matter?

THE DEFENDANT: Yes, your Honor.

THE COURT:  Has anyone offered you any inducements or threatened you or forced you to plead guilty or to enter into the plea agreement?

THE DEFENDANT: No, your Honor.

THE COURT:  You should understand that one of the terms of the plea agreement is that you're giving up your right to appeal your sentence or to challenge your sentence in any way at any time, so long as I sentence you to a term of imprisonment of 14 months or less.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT:  You should also understand that, under the terms of the plea agreement, you are giving up your right to appeal any term of supervised release I impose that is equal to or less than the statutory maximum of three years. Do you understand that?

THE DEFENDANT:  Yes, your Honor.

(Id. at 13-14)

        The Court then elicited a factual basis for Jaata's guilty plea.  When asked "what [Jaata] did that makes [him] believe that [he is] guilty of the crime charged in Count Two," Jaata responded as follows:

> Your Honor, I was an employee of HRA, who process applications for emergency
> benefits for people who are referred to me by Community Board Resource.  I help them
> fill out the applications and pass them on to a supervisor for approval.  Many times this
> involve approving the benefit even though the applicant had not provided proof of
> identity or other information, normally required before approval of such benefits, which
> was necessary because of their emergency situations. . . .  We could provide emergency
> benefits pending verification.  On a number of occasions, I allowed to have the benefit
> card sent to an address under my control, such as to my home address or a post office box
> I rented because the beneficiary did not have a sufficient address to receive mail.  I would
> then meet the beneficiary to give them the card.

(Id. at 15-16)  Jaata further explained that he "helped the beneficiary to send their cards to [his]

address or [an] address under [his] control," such as a P.O. box, and "would then meet the

beneficiary to give them the card," and "[o]n a number of occasions, . . . .went to stores with the

beneficiary . . . [to] help them use their card," including by using his Costco membership.  (Id. at

16-17)  Jaata stated that, in exchange, "the people sometimes gave [him] a portion of what they

bought, which [he] kept [for his] own use;" the beneficiaries also "gave [him] money."  (Id. at

17-18)  Jaata "knew it was wrong and against the law to take any benefits that [he] was not

entitled to."  (Id. at 18)

     The Court then asked, "Mr. Jaata, are you pleading guilty because you are, in fact,

guilty?"  Jaata replied, "Correct, your Honor."  (Id. at 19)  When the Court asked Jaata if he was

"pleading guilty voluntarily and of [his] own free will," Jaata again answered, "Yes, your

Honor."  (Id.)  Jaata then pleaded guilty to Count Two of the Indictment.  (Id. at 20)

     The Government asked that the Court allocute Jaata as to the forfeiture allegation

in the Indictment.  The Court informed Jaata that "there is what's called a forfeiture allegation in

the indictment, and in the forfeiture allegation, the government put you on notice that it's seeking

all property that constitutes or is derived from any of the proceeds that you obtained as a result of

the mail fraud offense to which you pleaded guilty."  The Court asked Jaata whether he "admit[s]

11

the forfeiture allegations set forth in the indictment."  Jaata responded, "Yes, your Honor."  (Id. at 20)

The Court then accepted Jaata's guilty plea and scheduled sentencing.  (Id. at 20-21)

On February 20, 2019, the Probation Office issued a Presentence Investigation Report ("PSR") for Jaata.  (Dkt. No. 36)  The PSR notes that restitution shall be ordered, and that "[t]he Government advised that restitution in the amount of $95,000 is owed to the U.S. Department of Agriculture and the NYC HRA."  (PSR (Dkt. No. 36) ¶¶ 86-87)  The Probation Office calculated the same Guidelines range to which the parties had stipulated in Jaata's plea agreement, and recommended a sentence of three years' probation, $95,000 in forfeiture, $95,000 in restitution, and a $100 special assessment.  (Id. at 19)

In a March 29, 2019 letter, defense counsel Nooter requested an adjournment of the sentencing date, explaining that, "after reviewing the [PSR, Jaata] had some second thoughts about whether he should have agreed to plead guilty, and it took some time working with him to resolve those reservations," which hampered counsel's efforts to prepare for sentencing.  (Mar. 29, 2019 Def. Ltr. (Dkt. No. 37) at 1)  The Court adjourned sentencing to May 31, 2019.  (Dkt. No. 38)

In a May 20, 2019 letter, Nooter requested (1) another adjournment; and (2) "that another attorney on the CJA panel be appointed to interview and advise [Jaata] on whether he should proceed with a possible motion to withdraw his guilty plea (or take some other action in the case)."  (May 20, 2018 Def. Ltr. (Dkt. No. 40) at 1)  Nooter reported that Jaata did not wish that Nooter be relieved, and only asked for a limited-purpose CJA appointment.  (Id. at 1-2)  Nooter further explained that Jaata "has had some second thoughts about whether he should have

agreed to plead guilty, or whether [Nooter] tried hard enough to get the government to agree to allow him to plead to a misdemeanor instead of a felony."  (Id. at 1)  Nooter explained that he had submitted a formal application to the Government seeking a misdemeanor plea, but that the Government had denied that request.  (Id.)

The Court granted Nooter's request for an adjournment and for appointment of another CJA lawyer to advise Jaata on whether he should move to withdraw his plea.  (Dkt. No. 41)

On July 18, 2019, Karloff Commissiong entered a notice of appearance as a CJA-appointed attorney on behalf of Jaata.  (Dkt. No. 45)  On September 16, 2019, Jaata filed a motion to withdraw his guilty plea.  (Dkt. No. 51)  On October 21, 2019, the Government filed its opposition to Jaata's motion.  (Dkt. No. 56)

## DISCUSSION

### I.  LEGAL STANDARD

Fed. R. Crim. Proc. 11(d) provides that "[a] defendant may withdraw a plea of guilty . . . if . . . the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).

> "In general, to determine whether the defendant has shown a 'fair and just reason' to justify withdrawal, a district court considers, inter alia:  (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the government would be prejudiced by a withdrawal of the plea."

United States v. Rivernider, 828 F.3d 91, 104 (2d Cir. 2016) (quoting United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004)).

While the "fair and just" standard implies that "motions to withdraw prior to sentence should be liberally granted," United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992), "a defendant who seeks to withdraw his plea 'bears "the burden of satisfying the trial

judge that there are valid grounds for withdrawal.'"" Id. (quoting United States v. Quinones, 906 F.2d 924, 928 (2d Cir. 1990)).  "There is no burden on the government to show that it would be prejudiced by the withdrawal of the guilty plea unless the defendant has shown sufficient grounds to justify withdrawal."  United States v. Gonzalez, 647 F.3d 41, 56 (2d Cir. 2011). "[N]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory."  Id. at 57 (citation omitted).  "[G]iven the strong societal interest in the finality of guilty pleas, a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea."  Id. at 56 (internal quotation marks and citation omitted).

## II.    ANALYSIS

### A.    Time Elapsed Since Guilty Plea

"The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea."  Gonzalez, 970 F.2d at 1100.  "[T]he longer the elapsed time, the less likely withdrawal would be fair and just."  United States v. Schmidt, 373 F.3d 100, 102 (2d Cir. 2004).  While the outer bounds of reasonable delay are not defined, courts have found that four months is too long a period to support withdrawal.  United States v. Albarran, 943 F.3d 106, 123 (2d Cir. 2019); see also Arakelian v. United States, No. 04 CR. 447R, 2009 WL 211486, at *8 (S.D.N.Y. Jan. 28, 2009) (collecting cases); see also Gonzalez, 970 F.2d at 1100 (defendant's motion was untimely when made "nearly seven months after the plea and only after he learned that the Government would not move for a downward departure" (internal citation omitted)); United States v. Fernandez, 734 F. Supp. 599, 602 (S.D.N.Y. 1990), (denying

withdrawal motion made four months after plea and after defendant had been furnished with the PSR, aff'd, 932 F.2d 956 (2d Cir. 1991).[1]

Here, Jaata pled guilty on November 29, 2018.  (Dkt. No. 34)  Four months later – on March 29, 2019 – Nooter wrote that "after reviewing the [PSR, Jaata] had some second thoughts about whether he should have agreed to plead guilty."  (Mar. 29, 2019 Def. Ltr. (Dkt. No. 37) at 1)  Nearly six months after Jaata's guilty plea, Nooter requested "that another attorney on the CJA panel be appointed to interview and advise [Jaata] on whether he should proceed with a possible motion to withdraw his guilty plea (or take some other action in the case)," because Jaata "has had some second thoughts about whether he should have agreed to plead guilty, or whether [Nooter] tried hard enough to get the government to agree to allow him to plead to a misdemeanor instead of a felony."  (May 20, 2018 Def. Ltr. (Dkt. No. 40) at 1)  And it was not until September 16, 2019 – nearly ten months after Jaata had pled guilty – that Jaata moved to withdraw his guilty plea.  (Dkt. No. 51)

Jaata concedes that, given this record, his motion to withdraw his guilty plea "is certainly not a 'swift change of heart.'"  (Def. Br. (Dkt. No. 51) at 2)  Indeed, Jaata waited until after the PSR was issued, and four months after he had entered his guilty plea, before expressing "second thoughts" about whether he should have pled guilty.  And even then, Jaata did not move to withdraw his plea.  (Mar. 29, 2019 Def. Ltr. (Dkt. No. 37) at 1)

---

[1]  See also United States v. Lesane, No. 18-CR-527 (KMW), 2020 WL 705087, at *2 (S.D.N.Y. Feb. 12, 2020) (denying motion to withdraw made two months after guilty plea); United States v. De La Rosa, No. 92 CR. 132 (CSH), 1993 WL 541184, at *5 (S.D.N.Y. Dec. 29, 1993) ("[F]ive weeks [is] not prompt enough to warrant withdrawal." (citation omitted)); United States v. Gilliam, No. 95 CR. 387 (JGK), 1996 WL 601399, at *6 (S.D.N.Y. Oct. 17, 1996) (denying motion to withdraw where "defendant waited more than two months to request a withdrawal of his plea"; "[t]he inference is plain that the defendant sought to withdraw his plea because of dissatisfaction with the prospect of restitution, despite having been warned at his allocution about the ability of the Court to impose restitution").

Six months after his guilty plea, Jaata continued his equivocation, repeating that he "has had some second thoughts about whether he should have agreed to plead guilty," and was concerned that his lawyer had not "tried hard enough to get the government to agree to allow him to plead to a misdemeanor instead of a felony." (May 20, 2018 Def. Ltr. (Dkt. No. 40) at 1)

It was not until September 16, 2019 – nearly ten months after Jaata's guilty plea – that he moved to withdraw his plea.[2] This record of delay and equivocation weighs against Jaata's application. See Schmidt, 373 F. 3d at 102; see also Albarran, 943 F.3d at 123; Gonzalez, 970 F.2d at 1100. That Jaata may have had a "change of heart" after reading the PSR does not provide a basis for this Court to grant his motion to withdraw his plea. Gonzalez, 970 F.2d at 1100.

### B. Legal Innocence Claim

"A claim of innocence can be a basis for withdrawing a guilty plea, but the claim must be supported by evidence. 'A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.'" United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) (quoting United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997)). Similarly, "[a] criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (quoting United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997)). "Pursuant to Fed. R. Crim. P. 11(f), a district court must assure itself 'that the conduct to which the defendant admits is in fact an offense under the statutory provision under

---

[2] Even after new counsel was appointed to discuss a potential motion to withdraw with Jaata, it was two months before a plea withdrawal motion was filed.

which he is pleading guilty.'" Rivernider, 828 F.3d at 104 (quoting Maher, 108 F.3d at 1524).

"To this end, a district court 'may rely on [the] defendant's own admissions, information from

the government, or other information appropriate to the specific case.'" Id. (quoting United

States v. Andrades, 169 F.3d 131, 136 (2d Cir. 2001)).

   Here, Jaata's legal innocence claim is premised on assertions of "a lack of intent

to defraud the Federal Government." (Def. Br. (Dkt. No. 51) at 2-3) According to Jaata, he

merely "went outside of the letter of the regulations he was supposed to be following." (Id. at 3)

   But in Jaata's plea allocution, he admitted that he had done more than merely act

"outside of the letter of the [applicable] regulations." During the plea hearing, Jaata was

informed that the elements of the offense to which he was pleading guilty included that he had

"knowingly and willfully participated in [a] scheme or artifice to defraud with knowledge of its

fraudulent nature and with the specific intent to defraud." (Plea Tr. (Dkt. No. 34) at 9-10) Jaata

then went on to admit that he had participated in such a fraudulent scheme.

   Jaata stated that, "[o]n a number of occasions," he arranged for a "benefit card [to

be] sent to an address under [his] control, such as to [his] home address or a post office box [he]

rented." (Id. at 16) And "[o]n a number of occasions, [Jaata went] to the stores with the

beneficiary and help[ed] them use their card," including by allowing the beneficiary to use his

Costco membership. "For doing this, the people sometimes gave [Jaata] a portion of what they

bought, which [Jaata] kept for [his] own use." (Id. at 17) SNAP beneficiaries also sometimes

gave money to Jaata. (Id. at 18) Jaata conceded that he "knew it was wrong and against the law

to take any benefits that [he] was not entitled to." (Id.) And when the Court asked Jaata if he

was "pleading guilty because [he was], in fact, guilty," Jaata replied, "Correct, your Honor." (Id.

at 19)

Jaata's "statements . . . under oath at his plea allocution carry a 'strong presumption of verity.'" Maher, 108 F.3d at 1530 (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).  While Jaata now claims that he "engaged in actions designed to assist distressed people unfamiliar with the welfare system, many of whom were recent immigrants" (Def. Br. (Dkt. No. 51) at 3), this argument does not demonstrate legal innocence.  See United States v. De La Rosa, No. 92 CR. 132 (CSH), 1993 WL 541184, at *4 (S.D.N.Y. Dec. 29, 1993) ("[U]nsupported allegations, which merely contradict [a defendant's] earlier statements under oath, are insufficient to set aside a guilty plea.  Courts give strong deference to statements made under oath by defendants in the course of a plea allocution.").  And "despite [Jaata's] post-plea self-serving statements that . . . he had no intent to defraud . . . , the record of [his] allocution and plea of guilty conclusively establish[] that he knew all of the elements of the offense[] with which he was charged," and that he "knowingly, intentionally, and with intent to defraud" perpetrated this scheme using the U.S. mails.  United States v. Rosen, 409 F.3d 535, 549-50 (2d Cir. 2005) (affirming the denial of motion to withdraw guilty plea to fraud offenses).  See also United States v. Coren, No. 07-CR-265 (ENV), 2009 WL 2579260, at *6 (E.D.N.Y. Aug. 20, 2009) (rejecting defendant's argument that he lacked the intent to deprive the government of money; "the record supports and reflects that [defendant] had notice of the nature and elements of the [wire fraud] charges against him, and, more critically, that he understood those elements at the time of his plea"),  aff'd, 432 F. App'x 38 (2d Cir. 2011).

Jaata's "position that he is innocent . . . amounts to no more than advocating an alternative theory of the evidence which he could have presented at trial and argued to the jury – that there is insufficient evidence showing [his intent to defraud]."  But Jaata "chose to admit the

necessary elements of the crime" instead of proceeding to trial.  United States v. Jacobs, 550 F. Supp. 2d 302, 308 (D. Conn. 2008).

In sum, Jaata's current claims of innocence do not negate his clear and unequivocal allocution at his plea – an allocution made after he was informed of the elements of the crime to which he pled guilty.

Jaata also argues that "the proof against [him] was not overwhelming," and that the "documents, videos and photographs" were "not conclusive, speculative and at best, showed . . . Jaata's presence with various individuals at different places where the EBT Cards were used." (Def. Br. (Dkt. No. 51) at 2-3)  Such evidence, Jaata contends, does "not exhibit an intent to commit fraud."  (Id. at 3)

But the issue is not whether the Government would prevail at trial.  The issue is whether the Defendant's factual allocution – as supplemented by the Government's proof – provides a basis for doubting that Jaata had the specific intent to defraud the federal government. See United States v. Adams, 448 F.3d 492, 499 (2d Cir. 2006) ("[A court] need not rely solely on defendant's allocution . . . to support the plea, rather any facts on the record at the time of the plea proceeding may be used.").  Moreover, "a showing of evil motive on the part of the defendant is not necessary."  United States v. William Savran & Assocs., Inc., 755 F. Supp. 1165, 1181 (E.D.N.Y. 1991).  And "specific intent [to defraud the government under 18 U.S.C. § 1341] need not necessarily be proved by direct evidence, but may also be inferred from the defendant's actions and other circumstantial evidence."  United States v. Gelb, 700 F.2d 875, 880 (2d Cir. 1983).  "Where the 'necessary result of the scheme is to injure others, fraudulent intent may be inferred from the scheme itself.'"  United States v. Vaccarelli, No. 3:18CR92

(JBA), 2020 WL 1329695, at *3 (D. Conn. Mar. 23, 2020) (quoting United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)).

Here, there is evidence that, on multiple occasions, Jaata awarded a purported applicant SNAP benefits, and arranged for the applicant's account to be linked to his home address or P.O. box, or other addresses that he controlled, where the EBT card was then mailed. (Cmplt. (Dkt. No. 1) ¶¶ 13-15, 18, 20-21)  Jaata also awarded SNAP benefits to an account for which his spouse accessed the benefits hotline.  And surveillance video and other records from a store in Harlem show Jaata making purchases with EBT cards associated with some of those accounts.  (Id. ¶¶ 19, 22)  There is also evidence that – when Jaata was assigning benefits – the computer system warned him that he was entering Social Security numbers associated with someone other than the account holder.  Jaata then used an override feature so that he could process the fraudulent transaction.  (Id. ¶ 23)  This evidence is more than sufficient to demonstrate that Jaata knew that the result of his scheme would be injury to the federal government.  See Gelb, 700 F.2d at 880 (evidence that defendant "grossly inflated losses and asked his employees to verify proof of loss forms which were wholly inaccurate" showed circumstantial intent to defraud).

In sum, Jaata's motion to withdraw his guilty plea is not supported by a plausible claim of innocence.

### C.    Whether Jaata's Guilty Plea was Knowing and Voluntary

Jaata contends that his plea was not knowing and voluntary, because he was "unaware" that his plea would result in a felony conviction, and not a misdemeanor conviction. (Def. Br. (Dkt. No. 51) at 3)  Jaata also claims that he was

> confused about the application of restitution.  Mr. Jaata's understanding was that the $100.00 special assessment[] fulfilled restitution pursuant to the plea agreement.  When

he read the PSR, and saw that Probation recommended a payment of $95,000.00 restitution, he was surprised.  Mr. Jaata was not aware that as a consequence of his plea, the Court could order restitution, equal to the value of the Forfeiture in this matter, or that restitution was separate from the special assessment.

(Id. at 3-4)

"Where a motion to withdraw a plea is premised on involuntariness, the defendant must raise a significant question about the voluntariness of the original plea.  A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."  United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) (quotation marks and citations omitted).  "In determining whether a guilty plea was entered into knowingly and voluntarily, a district court is entitled to rely on and accept as true the defendant's sworn statements made at the plea allocation, 'including statements that the defendant . . . understood the terms of the plea agreement.'"  United States v. Morton, No. 16-CR-371-5 (RA), 2020 WL 6151265, at *10 (S.D.N.Y. Oct. 20, 2020) (citation omitted).

Here, Jaata was informed during his plea allocution, as well as in his plea agreement – which he claimed to have read and understood (Plea Tr. (Dkt. No. 34) at 13-14; see Jaata Plea Agmt. (Dkt. No. 63)) – of the consequences of his guilty plea.  Jaata was informed both during the Rule 11 proceeding and in his plea agreement that he faced a "maximum term of imprisonment of 20 years."  (Plea Tr. (Dkt. No. 34) at 10; see Jaata Plea Agmt. (Dkt. No. 63) at 1)  The Court also made clear that Jaata was pleading guilty to a felony.  Indeed, the Court warned Jaata of the collateral consequences of "[b]eing convicted of a felony," including "the loss of licenses or the right to possess a firearm," as well as voting and immigration consequences.  The Court noted that it was not providing "a full list of the consequences of a felony conviction, but these are examples."  (Plea Tr. (Dkt. No. 34) at 11)  When the Court asked

Jaata whether he understood these consequences, Jaata repeatedly said that he did.  (Id. at 10-11)

In short, Jaata was aware that he was pleading guilty to a felony offense.

The Court also informed Jaata that, "[a]s part of [Jaata's] sentence, [the Court]

can order [him] to make restitution to anyone that was injured by [his] criminal conduct, and . . .

can also order [him] to forfeit certain property to the government."  (Id. at 11)  Jaata confirmed

that he understood these consequences (id.), which are also set forth in his plea agreement.

(Jaata Plea Agmt. (Dkt. No. 63) at 1-2 ("[T]he Court must order restitution"; "[i]t is further

understood that the defendant shall make restitution in an amount to be specified by the Court in

accordance with Title 18, United States Code, Sections 3663, 3663A, and 3664."))

As to general voluntariness, when the Court asked Jaata if he was "pleading guilty

voluntarily and of [his] own free will," Jaata answered, "Yes, your Honor."  (Plea Tr. (Dkt. No.

34) at 19)  And when the Court asked Jaata whether "anyone [had] offered [him] any

inducements or threatened [him] or forced [him] to plead guilty or [to] enter into the plea

agreement," Jaata responded, "No, your Honor."  (Id. at 14)

The record here demonstrates that Jaata's plea was knowing and voluntary.  See

Doe, 537 F.3d at 213 (determining that defendant's guilty plea was voluntary where defendant

"stated that he was entering his plea voluntarily, and not 'as a result of any fear, pressure, threat

or force of any kind'"); Torres, 129 F.3d at 715 (determining that defendant's guilty plea was

"completely voluntary and knowing" where, "[d]uring his plea, he was explicitly asked by the

district court judge whether anyone forced him to [plead guilty], to which he responded no," and

where he was "given every chance by the district court to raise any concerns, questions or

anxieties about the plea").

Jaata argues, however, that his plea was not voluntary because it was the product of ineffective assistance of counsel.  (Def. Br. (Dkt. No. 51) at 4)  Jaata asserts that "he was unaware whether" the Government had responded to Nooter's request for a misdemeanor or deferred prosecution and – after leaving a reverse proffer meeting at the U.S. Attorney's Office – left with no understanding as to whether he would be required to plead guilty to a felony.  (Id. at 3)  Jaata also claims that "he did not read the plea agreement, nor did he review it with his counsel."  (Id. at 4)

"Ineffective assistance of counsel may render a guilty plea involuntary."  United States v. Deleon, No. 13-CR-0811 (ALC), 2018 WL 6528492, at *4 (S.D.N.Y. Dec. 12, 2018) (citing United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005); Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)).  "Claims of ineffective assistance of counsel in this context are governed by Strickland v. Washington, 466 U.S. 668 (1984), which requires a defendant to establish that: (1) counsel's representation 'fell below an objective standard of reasonableness' as measured under 'prevailing professional norms;' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Deleon, 2018 WL 6528492, at *4 (quoting Strickland, 466 U.S. at 688, 694).  "Where the defendant's 'specific claim is that counsel has misled [him] as to the possible sentence which might result from a plea of guilty, . . . the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in [his] decision to enter a plea.'"  Morton, 2020 WL 6151265, at *17 (citation omitted).  "[A] defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's

errors,' []he 'would not have pleaded guilty and would have insisted on going to trial.'"   Id.

(citations omitted).

> The defendant must also show "that a decision to reject the plea bargain would have been rational under the circumstances."  In making this determination, courts consider a number of factors, including whether (1) the defendant knew "that the advice on which he claims to have relied might be incorrect;" (2) pleading guilty led to more lenient sentencing; (3) "the defendant advanced any basis for doubting the strength of the government's case against him; and (4) the Government could have prosecuted the defendant on additional counts.

Deleon, 2018 WL 6528492, at *5 (citations omitted).

Here – as an initial matter – Jaata's claims that he did not read his plea agreement, and did not discuss the plea agreement with his lawyer, are not credible.  During the Rule 11 proceeding, Jaata assured the Court that he had read the plea agreement before he signed, it, and that his lawyer had discussed it with him.  (Plea Tr. (Dkt. No. 34) at 13-14)  And when the Court asked Jaata whether he "underst[oo]d all of the terms of the plea agreement before [he] signed it," Jaata responded, "[y]es, your Honor."  (Id. at 14)  Jaata also told the Court that he had discussed the charges against him with Nooter; had discussed with Nooter his intention to plead guilty; had discussed with Nooter any defenses he might have to the charges against him, as well as all the facts about his "involvement in this matter;" and that Nooter had told Jaata "about the consequences of pleading guilty."  Jaata also assured the Court that he was "satisfied with Nooter's representation of [him]."  (Plea Tr. (Dkt. No. 34) at 5-6)

Given these circumstances, this Court will credit Jaata's sworn testimony at the Rule 11 proceeding, rather than the conclusory and contradictory unsworn assertions Jaata makes now.  United States v. Reyes-Gonzalez, No. 18-CR-18 (ALC), 2021 WL 2651228, at *6 (S.D.N.Y. June 28, 2021) (disregarding "unsubstantiated and unsupported claims" that counsel did not discuss plea agreement with defendant, given sworn testimony to the contrary).  "[T]he Court is 'entitled to rely upon [Jaata's] sworn statements, made in open court . . . ., that he

understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving [certain rights],' and was satisfied with his counsel."  Id. at *7 ("[S]tatements during plea allocution have 'such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" (quoting United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001))).

Moreover, as discussed above, Jaata was informed during the Rule 11 proceeding and in his plea agreement of the penalties he faced; the fact that he was pleading guilty to a felony offense that carried a maximum sentence of twenty years' imprisonment; and that restitution would be imposed.  Jaata has made no attempt to argue that he would not have pled guilty had he known the consequences of his plea.  The guilty plea also offered real benefit to Jaata, including acceptance of responsibility credit and a lower Guidelines range.  Finally, there is no reason to doubt the strength of the Government's case against Jaata, and the Government agreed to drop the other four open counts in exchange for Jaata's guilty plea to Count Two.  (See Jaata Plea Agmt. (Dkt. No. 63) at 1)

The Court concludes that Jaata has not met his burden to demonstrate that his plea was rendered involuntary by ineffective assistance of counsel.

### D.       Prejudice to the Government

"The Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered by the district court in exercising its discretion."  Gonzalez, 970 F.2d at 1100; see also Gonzalez,

647 F.3d at 56 ("There is no burden on the government to show that it would be prejudiced by the withdrawal of the guilty plea unless the defendant has shown sufficient grounds to justify withdrawal."); Rosen, 409 F.3d at 547 ("Having found that the claim-of-innocence and the elapsed-time criteria were not met . . . , the court . . . was not required to reach[] the question of whether withdrawal of the plea would cause the government prejudice.").

Here, as discussed above, Jaata has not shown "sufficient grounds for permitting withdrawal."  Accordingly, this Court need not consider whether the Government would suffer prejudice if Jaata were permitted to withdraw his plea.

## **CONCLUSION**

For the reasons stated above, Jaata's motion to withdraw his guilty plea is denied. Sentencing will take place on **October 27, 2021, at 12:30 p.m.**  Any additional submissions on behalf of Jaata are due on **October 6, 2021**, and any submission from the Government is due on **October 13, 2021**.

Dated: New York, New York
        September 16, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

26