UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

OMAR JAATA,

Defendant.

**ORDER**

18 Cr. 162 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On November 29, 2018, Defendant Omar Jaata pleaded guilty to mail fraud in violation of 18 U.S.C. § 1341.  (Dkt. No. 34)  Prior to sentencing, Jaata moved to withdraw his guilty plea, contending that his guilty plea was not knowing and voluntary and that he is innocent.  (Dkt. No. 51)  On September 16, 2021, this Court denied Jaata's motion to withdraw his guilty plea, finding that Jaata's guilty plea was knowing and voluntary, and that Jaata's plea allocution and the Government's documentary evidence provide an ample basis to reject his claim of innocence.  (Sept. 16, 2021 Order (Dkt. No. 64) at 16-25)  On February 24, 2022, this Court sentenced Jaata to a year and a day imprisonment, and two years' supervised release. (Judgment (Dkt. No. 81) at 2-3)  On February 25, 2022, Jaata filed a notice of appeal.  (Dkt. No. 82)  Now pending before the Court is Jaata's motion to remain on bail pending appeal.  (Dkt. No. 86)

For the reasons stated below, Jaata's motion will be denied.

## BACKGROUND

## I.   FACTUAL ALLEGATIONS

Beginning in or about September 2010, Jaata worked at the New York City Human Resources Administration ("HRA") as an Eligibility Specialist II.  (Cmplt. (Dkt. No. 1)

¶ 12)  In that role, he determined and verified initial and continuing eligibility for individuals receiving public assistance benefits, including the federally-funded Supplemental Nutrition Assistance Program ("SNAP"), commonly referred to as "food stamps."  (Id. ¶¶ 9, 11-12)  Qualified recipients of SNAP are given an EBT card loaded with monetary benefits that the authorized user can access with an assigned Personal Identification Number ("PIN").  (Id. ¶ 11)  Jaata had the ability to award "single issuance" SNAP benefits to expedite benefits for individuals with a documented, urgent need.  (Id. ¶ 12)

On November 21, 2014, February 25, 2016, and November 28, 2016, Jaata awarded a purported applicant approximately $973 in SNAP benefits to three separate accounts linked to his home address or P.O. box, where the EBT card was mailed.  More than $14,000 worth of benefits was added to these three accounts, and subsequently spent.  (Id. ¶¶ 13-16, 18, 20-21)  Surveillance video and other records from a store in Harlem show Jaata making purchases with EBT cards associated with two of these three accounts.  (Id. ¶¶ 19-20)

On April 22, 2016, Jaata awarded SNAP benefits to an account for which his spouse accessed the benefits hotline.  Jaata was seen on video surveillance using the EBT card associated with this account, into which a total of $10,676 in benefits was loaded.  (Id. ¶ 22)

On another occasion, Jaata awarded an account $973 in SNAP benefits by using an override function after being warned that the Social Security number Jaata was using belonged to someone other than the account holder.  The EBT cards for that account were sent to an apartment in the same building as Jaata's home address, and to another address Jaata had used to access EBT cards to which he had added funds.  (Id. ¶ 23)

The Complaint alleges that, in total, Jaata "and his co-conspirators" created and/or used approximately twenty-four accounts to effectuate EBT fraud.  (Id. ¶¶ 10, 17)  Jaata's Pre-

Sentence Investigation Report ("PSR") states that he received $95,000 in fraudulent benefits. (Revised PSR (Dkt. No. 44) ¶¶ 21-22)[1]

Jaata was arrested on November 28, 2017 (Dkt. No. 4), and on February 26, 2018, the Government obtained an indictment charging him with (1) conspiracy to commit mail and wire fraud; (2) mail fraud; (3) wire fraud; (4) theft of public funds; and (5) aggravated identity theft.  (Indictment (Dkt. No. 11))

On August 17, 2018, Jaata moved to suppress his post-arrest statements.  (Dkt. No. 23)  The Government filed an opposition brief on September 25, 2018.  (Dkt. No. 31)  While the motion was pending, Jaata decided to plead guilty.

## II.    GUILTY PLEA

On November 29, 2018, pursuant to a plea agreement (Dkt. No. 63), Jaata pled guilty to Count Two of the Indictment, which charges him with mail fraud.  At the Rule 11 proceeding, Jaata confirmed that he understood the charges against him and the rights he was waiving by pleading guilty.  The Court also confirmed that Jaata had had sufficient time to discuss his case with his attorney, Thomas Nooter, and that Jaata was satisfied with Nooter's representation.  (Plea Tr. (Dkt. No. 34) at 2, 5-15; see also Sept. 16, 2021 Order (Dkt. No. 64) at 3-8)  The Court marked as exhibits to the plea proceeding an Advice of Rights Form Jaata had executed (Dkt. No. 62) and Jaata's plea agreement (Dkt. No. 63).  Jaata confirmed that he had reviewed the plea agreement with his attorney and understood its terms.  (Plea Tr. (Dkt. No. 34) at 2-3, 13-14; see also Sept. 16, 2021 Order (Dkt. No. 64) at 8-9)

---

[1]  Jaata's now-ex-wife was initially charged along with Jaata, but she subsequently entered into a deferred prosecution agreement.  (Revised PSR (Dkt. No. 44) ¶¶ 23, 53)

The Court also advised Jaata of the consequences of pleading guilty to Count

Two:

> Count Two carries a maximum term of imprisonment of 20 years and a maximum term of
> supervised release of three years; also, a maximum fine of $250,000 or twice the gross
> pecuniary gain derived from the offense or twice the gross pecuniary loss resulting from
> the offense, whichever is greatest.  Also, there is a mandatory $100 special assessment or
> fine that I'm required to impose.
> . . . .
> As part of your sentence, I can order you to make restitution to anyone that was injured
> by your criminal conduct, and I can also order you to forfeit certain property to the
> government.  Do you understand that?

(Plea Tr. (Dkt. No. 34) at 10-11; see also Sept. 16, 2021 Order (Dkt. No. 64) at 7)  Jaata stated

that he understood those penalties.  (Plea Tr. (Dkt. No. 34) at 10-11)

The Court also warned Jaata that "[b]eing convicted of a felony" had other

consequences:

> Being convicted of a felony may have other consequences, such as the loss of licenses or
> the right to possess a firearm.  If you are a citizen of the United States, you could lose
> your right to vote.  If you're not a citizen of the United States, you will likely lose your
> right to remain in the United States, and you may be deported.  This is not a full list of the
> consequences of a felony conviction, but these are examples.  Do you understand that?

(Id. at 11; see also Sept. 16, 2021 Order (Dkt. No. 64) at 7)  Jaata responded that he understood

such consequences.  (Plea Tr. (Dkt. No. 34) at 11)

The Court also elicited a factual basis for Jaata's guilty plea.  When asked "what

[Jaata] did that makes [him] believe that [he is] guilty of the crime charged in Count Two," Jaata

responded as follows:

> Your Honor, I was an employee of HRA, who process applications for emergency
> benefits for people who are referred to me by Community Board Resource.  I help them
> fill out the applications and pass them on to a supervisor for approval.  Many times this
> involve approving the benefit even though the applicant had not provided proof of
> identity or other information, normally required before approval of such benefits, which
> was necessary because of their emergency situations. . . .  We could provide emergency
> benefits pending verification.  On a number of occasions, I allowed to have the benefit
> card sent to an address under my control, such as to my home address or a post office box

4

I rented because the beneficiary did not have a sufficient address to receive mail.  I would then meet the beneficiary to give them the card.

(Id. at 15-16)  Jaata further explained that he "helped the beneficiary to send their cards to [his] address or [an] address under [his] control," such as a P.O. box, and "would then meet the beneficiary to give them the card," and "[o]n a number of occasions, . . . . went to stores with the beneficiary . . . . [to] help them use their card," including by using his Costco membership.  (Id. at 16-17)  Jaata stated that, in exchange, "the people sometimes gave [him] a portion of what they bought, which [he] kept [for his] own use"; the beneficiaries also "gave [him] money."  (Id. at 17-18)  Jaata "knew it was wrong and against the law to take any benefits that [he] was not entitled to.  (Id. at 18; see also Sept. 16, 2021 Order (Dkt. No. 64) at 10-11)

The Court then asked, "Mr. Jaata, are you pleading guilty because you are, in fact, guilty?"  Jaata replied, "Correct, your Honor."  (Id. at 19)  When the Court asked Jaata if he was "pleading guilty voluntarily and of [his] own free will," Jaata again answered, "Yes, your Honor."  (Id.)  Jaata then pleaded guilty to Count Two of the Indictment.  (Id. at 20; see also Sept. 16, 2021 Order (Dkt. No. 64) at 11)

At the conclusion of the proceeding, the Court accepted Jaata's guilty plea and scheduled sentencing for April 10, 2019.  (Plea Tr. (Dkt. No. 34) at 20-21; see also Sept. 16, 2021 Order (Dkt. No. 64) at 12)

### III.     MOTION TO WITHDRAW

On February 20, 2019, the Probation Office issued its Pre-Sentence Investigation Report for Jaata.  (Dkt. No. 36)  The PSR reflects the stipulated Guidelines range set forth in the parties' plea agreement – 8 to 14 months' imprisonment (Plea Agmt. (Dkt. No. 63) at 2).  The PSR recommends a sentence of three years' probation; restitution of $95,000 to the U.S.

Department of Agriculture and the New York City Human Resources Administration; forfeiture of $95,000; and a $100 special assessment.  (PSR (Dkt. No. 36) at 19, 24)

In a March 29, 2019 letter, defense counsel Nooter requested an adjournment of the sentencing date, explaining that, "after reviewing the Pre-Sentence Report, [Jaata] had some second thoughts about whether he should have agreed to plead guilty, and it took some time working with him to resolve those reservations," which hampered counsel's efforts to prepare for sentencing.  (Mar. 29, 2019 Def. Ltr. (Dkt. No. 37) at 1)  The Court adjourned sentencing to May 31, 2019.  (Dkt. No. 38)

In a May 20, 2019 letter, Nooter requested (1) an additional adjournment; and (2) "that another attorney on the CJA panel be appointed to interview and advise [Jaata] on whether he should proceed with a possible motion to withdraw his guilty plea (or take some other action in the case)."  (May 20, 2019 Def. Ltr. (Dkt. No. 40) at 1)  Nooter explained that Jaata "has had some second thoughts about whether he should have agreed to plead guilty, or whether [Nooter] tried hard enough to get the government to agree to allow him to plead to a misdemeanor instead of a felony."  (Id.)  Nooter noted that he had submitted a formal application to the Government seeking misdemeanor plea, but that the Government had denied that request.  (Id.)  Nooter reported that Jaata did not wish that Nooter be relieved, and only asked for a limited-purpose CJA appointment.  (Id. at 1-2)

On May 21, 2019, the Court granted Nooter's request for an adjournment and for appointment of another lawyer on the Criminal Justice Act ("CJA") panel to advise Jaata on whether he should move to withdraw his plea.  (Dkt. No. 41)  Sentencing was subsequently adjourned to July 26, 2019.  (Dkt. Nos. 41-43)  On July 18, 2019, Karloff Commissiong entered a notice of appearance as a CJA-appointed attorney on behalf of Jaata.  (Dkt. No. 45)  In July 18,

2019 and August 9, 2019 letters, Commissiong requested further adjournments of sentencing to "facilitate continued conversations with Mr. Jaata" as to whether he would withdraw his guilty plea. (Dkt. Nos. 46, 48) This Court granted the requested adjournments, but set a conference to discuss the "repeated requests for adjournment[]." (Dkt. Nos. 47, 49) At an August 26, 2019 conference with Jaata, the Court set a deadline of September 16, 2019 for Jaata to file any motion to withdraw his plea. (Aug. 26, 2019 Sealed Tr., at 5)

On September 16, 2019, Jaata filed a motion to withdraw his guilty plea. (Dkt. No. 51) In his motion, Jaata asserted that, in January 2019 – approximately two months after his guilty plea was entered – he told attorney Nooter that he should not have pleaded guilty. (Sept. 16, 2019 Motion (Dkt. No. 51) at 2) Jaata also asserted that he was innocent because – although he "went outside of the letter of the regulations he was supposed to be following [at the HRA]" – he did not intend to defraud the federal government, and was merely "assist[ing] people in dire need." (Id. at 2-3) He also claimed that he did not understand that he was pleading guilty to a felony, since "[h]is understanding of the plea and sentencing process was that the Court would decide[] at sentencing[] whether he would be granted a misdemeanor[] or a felony in this matter." (Id. at 3) And he claimed that he was not aware that the Court could order restitution in the amount of $95,000, because he mistakenly believed that the $100 special assessment addressed restitution. (Id.) Finally, Jaata claimed that he had received ineffective assistance of counsel because attorney Nooter did not (1) inform him that the Government had rejected Jaata's request for a misdemeanor or deferred prosecution; and (2) did not review the plea agreement with him prior to his guilty plea. (Id. at 3-4)

On September 16, 2021, this Court issued an order (the "September 16, 2021 Order") denying Jaata's motion to withdraw. (Sept. 16, 2021 Order (Dkt. No. 64)) In that order,

this Court found that Jaata had not shown a "swift change of heart" regarding his guilty plea, because he did not express "second thoughts" about the plea until four months after the plea, when the PSR was issued. (Id. at 14-16)  This Court further concluded that Jaata had not shown his innocence, given his "unequivocal" allocution and evidence showing that he (1) sent SNAP benefits to addresses he owned or controlled; (2) awarded SNAP benefits to an account for which his wife accessed the benefits hotline; (3) made purchases at stores using these accounts; and (4) used an override feature to award benefits after his computer system warned him about a discrepancy between the name and Social Security number of a purported applicant. (Id. at 16-20)

This Court further concluded that Jaata's plea was knowing and voluntary. Jaata was properly informed of the consequences of his guilty plea in both his plea agreement and at the Rule 11 proceeding. (Id. at 20-25)  As to Jaata's allegations of ineffective assistance of counsel, this Court rejected these allegations as not credible. In asserting that he had not read his plea agreement and had not discussed the plea agreement with attorney Nooter, Jaata contradicted his sworn statements at the Rule 11 proceeding. (Id. at 24-25)  As to Jaata's claim that he was not aware that he was pleading guilty to a felony, at the Rule 11 proceeding, Jaata was informed that he was pleading guilty to an offense that carried a maximum sentence of twenty years' imprisonment. This Court also repeatedly referred to the offense as a felony. (Id. at 25)

Having denied Jaata's motion to withdraw his plea, the Court scheduled sentencing for October 27, 2021. (Id. at 26)

IV.    **SENTENCING**

At a November 9, 2021 conference, Jaata told the Court that that he did not want either Nooter or Commissiong to represent him at sentencing.  (Nov. 9, 2021 Tr. (Dkt. No. 72) at 3-6)  Accordingly, the Court issued an order relieving both Nooter and Commissiong; arranging for a third CJA lawyer to represent Jaata; and scheduling sentencing for February 24, 2022. (Dkt. No. 70)

In Jaata's sentencing submission, his third CJA lawyer – Benjamin Silverman – argued that

> Mr. Jaata pled guilty, foregoing a trial, and accepted responsibility for what he did.  He later became scared and sought to withdraw the plea.  His fears were compounded by learning first-hand the impediments that this conviction will impose on his ability to obtain employment for the rest of his life.  It was clearly a mistake [to move to withdraw the plea].

(Feb. 3, 2022 Def. Sent. Br. (Dkt. No. 74) at 4)

At the February 24, 2022 sentencing, this Court ruled that – because Jaata had moved to withdraw his plea on grounds of innocence – he was not entitled to acceptance of responsibility credit, and the applicable Guidelines range was 12 to 18 months' imprisonment. (Sent. Tr. (Dkt. No. 83) at 4-10)

In discussing Jaata's offense, this Court noted that it was not a typical food stamps fraud case.  Most such cases involve recipients or storeowners who improperly use or accept food stamps.  Jaata's offense was unusual "because it involves someone who actually administered the program" and "abused a position of trust."  (Id. at 20; see also id. at 24-25) After considering all the relevant circumstances, the Court imposed a sentence of a year and a

day imprisonment and two years' supervised release.[2]  (Id. at 25, 28-29)  At Jaata's request, this Court permitted him sixty days to surrender, and set a surrender date of April 25, 2022.  (Id. at 27, 29-30)  This Court later extended Jaata's surrender date to May 9, 2022, again at his request. (See April 11, 2022 Motion (Dkt. No. 86) at 2 n.1; Dkt. Nos. 89-91)

## V.   MOTION FOR BAIL PENDING APPEAL

On February 25, 2022, Jaata filed a notice of appeal.  (Dkt. No. 82; see United States v. Jaata, No. 22-403 (2d Cir.))  On April 11, 2022, through a fourth court-appointed lawyer, Jaata moved for bail pending appeal, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b). (April 11, 2022 Motion (Dkt. No. 86) at 1)  In his motion, Jaata argues that he is entitled to bail pending appeal under Section 3143(b) because (1) he poses no risk of flight or danger to the community; and (2) his appeal raises a "substantial" question as to whether his plea was knowing and voluntary.  (Id. at 2-7)

In opposing Jaata's application, the Government contends that he has "merely repackage[d] arguments properly rejected by this Court."  (April 15, 2022 Govt. Opp. (Dkt. No. 88) at 5)

## DISCUSSION

## I.   LEGAL STANDARD

### A.   Bail Pending Appeal

The Bail Reform Act, 18 U.S.C. § 3143(b), governs whether a defendant is entitled to release on bail pending appeal.  Section 3143(b) provides, in relevant part, that a court "shall order that a person who has been found guilty of an offense and sentenced to a term of

---

[2]  The Court stated that its sentence would have been the same even if Jaata had received acceptance of responsibility credit.  (Sent. Tr. (Dkt. No. 83) at 8, 29)

imprisonment" be detained pending appeal unless the court finds

   (A)    by clear and convincing evidence that the person is not likely to flee or pose a
          danger to the safety of any other person or the community if released . . . ; and

   (B)    that the appeal is not for the purpose of delay and raises a substantial question of
          law or fact likely to result in –

          (i)     reversal,

          (ii)    an order for a new trial,

          (iii)   a sentence that does not include a term of imprisonment, or

          (iv)    a reduced sentence to a term of imprisonment less than the total of the
                  time already served plus the expected duration of the appeal process. . . .

18 U.S.C. § 3143(b)(1).

        The Second Circuit has defined a "substantial question of law or fact" as a

question "'of more substance than would be necessary to a finding that it [i]s not frivolous'" –

that is, "'a close question or one that very well could be decided the other way.'"  United States

v. Randell, 761 F.2d 122, 125 (2d Cir. 1985) (quotation marks omitted) (quoting United States v.

Giancola, 754 F.2d 898, 901 (11th Cir. 1985)).  Where a defendant raises a substantial question

of law or fact, a court "must then consider whether that question is 'so integral to the merits of

the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely

to require reversal of the conviction or a new trial.'"  Id. (quoting United States v. Miller, 753

F.2d 19, 23 (3d Cir. 1985)).  The defendant has the burden of demonstrating that the

requirements of Section 3143(b) are met.  Id.

## II.    ANALYSIS

### A.    Risk of Flight and Danger to the Community

        There is no evidence that Jaata presents a danger to the community.  As to risk of

flight, the record is more complicated.

Jaata has substantial ties to Gambia.  He spent the first twenty-seven years of his life in Gambia.  He attended college there, and obtained a teaching degree.  Jaata's current wife, his mother, and two siblings reside in Gambia.  (Revised PSR (Dkt. No. 44) ¶¶ 45-46, 49-51, 54, 60-61)  While Jaata has been fully compliant with the conditions of his pre-trial release, the circumstances that prevailed prior to sentencing have changed.  Jaata now faces a substantial prison sentence.  Given Jaata's close ties with Gambia and the sentence he faces, this Court is not prepared to find, by clear and convincing evidence, that he is not likely to flee.

### B.      Whether Jaata's Appeal Is for Purposes of Delay

The conduct that is the basis for Jaata's conviction took place between 2014 and 2017.  (Id. ¶ 11)  Through the device of moving to withdraw his plea, and by repeatedly accusing one court-appointed lawyer after another of providing ineffective assistance of counsel, Jaata has managed to delay execution of sentence seven years or more.  And Jaata is not ignorant of the criminal justice system:  he has a master's degree in criminal justice, and a bachelor's degree from John Jay College of Criminal Justice.  (Id. ¶ 60; see also Plea Tr. (Dkt. No. 34) at 4)

The Court concludes that Jaata's appeal is for purposes of delay.

### C.      Whether Jaata's Appeal Raises a Substantial Question of Law or Fact

Jaata argues that his appeal raises a substantial question of law or fact as to whether his guilty plea was entered knowingly and voluntarily.  (See April 11, 2022 Motion (Dkt. No. 86) at 4-7)  As discussed above, this Court squarely rejected Jaata's arguments in its September 16, 2021 Order.  (Sept. 16, 2021 Order (Dkt. No. 64))  Jaata's arguments in the instant motion largely repeat arguments that this Court has rejected.

Fed. R. Crim. P. 11(d) provides that "[a] defendant may withdraw a plea of guilty

. . . [if] the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R.

Crim. P. 11(d)(2)(B).

> "In general, to determine whether the defendant has shown a 'fair and just reason' to
> justify withdrawal, a district court considers, inter alia:  (1) whether the defendant has
> asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the
> amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the
> government would be prejudiced by a withdrawal of the plea."

United States v. Rivernider, 828 F.3d 91, 104 (2d Cir. 2016) (omission in Rivernider) (quoting

United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004)).  A defendant who seeks to

withdraw his plea "bears the burden of satisfying the trial judge that there are valid grounds for

withdrawal."  United States v. Quinones, 906 F.2d 924, 928 (2d Cir. 1990) (quotation marks and

citations omitted).  The Second Circuit reviews a district court's denial of a motion to withdraw a

plea for abuse of discretion.  United States v. Rose, 891 F.3d 82, 85 (2d Cir. 2018).

### 1.    Timing of Jaata's Motion to Withdraw His Plea

In its September 16, 2021 Order, this Court found that Jaata's motion to withdraw

his guilty plea did not reflect "a swift change of heart":

> . . . Jaata waited until after the PSR was issued, and four months after he had entered his
> guilty plea, before expressing "second thoughts" about whether he should have pled
> guilty.  And even then, Jaata did not move to withdraw his plea.  (Mar. 29, 2019 Def. Ltr.
> (Dkt. No. 37) at 1)

> Six months after his guilty plea, Jaata continued his equivocation, repeating that he "has
> had some second thoughts about whether he should have agreed to plead guilty," and was
> concerned that his lawyer had not "tried hard enough to get the government to agree to
> allow him to plead to a misdemeanor instead of a felony."  (May 20, 201[9] Def. Ltr.
> (Dkt. No. 40) at 1)

> It was not until September 16, 2019 – nearly ten months after Jaata's guilty plea – that he
> moved to withdraw his plea.  This record of delay and equivocation weighs against
> Jaata's application.

13

(Sept. 16, 2021 Order (Dkt. No. 64) at 15-16 (footnote and citations omitted); id. at 16 n.2

("Even after new counsel was appointed to discuss a potential motion to withdraw with Jaata, it

was two months before a plea withdrawal motion was filed."))

            In the instant motion, Jaata argues that this Court did not give sufficient weight to

Jaata's assertion that he expressed to counsel his desire to withdraw his plea as early as January

2019, two months after his guilty plea.  (April 11, 2022 Motion (Dkt. No. 86) at 6)  But what the

record summarized above actually reflects is equivocation on Jaata's part – over a period of ten

months – as to whether to move to withdraw his guilty plea.[3]  Contrary to current counsel's

arguments, the record does not demonstrate a "swift change of heart."  See United States v. De

La Rosa, No. 92 CR. 132 (CSH), 1993 WL 541184, at *5 (S.D.N.Y. Dec. 29, 1993) (denying

motion to withdraw guilty plea and noting that four-month delay in seeking to withdraw plea and

defendant's subsequent indecision in pursuing the motion "undercut" the defendant's "claim of

innocence and coercion"); see also United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir.

1992) ("The fact that a defendant has a change of heart prompted by his reevaluation of either

---

[3] Jaata's indecision and equivocation led to repeated requests for adjournments from multiple
lawyers.  (See March 29, 2019 Def. Ltr. (Dkt. No. 37) at 1 ("[M]y client, after reviewing the Pre-
Sentence Report, had some second thoughts about whether he should have agreed to plead guilty,
and it took some time working with him to resolve those reservations."); May 20, 2019 Def. Ltr.
(Dkt. No. 40) at 1 ("[M]y client has had some second thoughts about whether he should have
agreed to plead guilty, or whether I tried hard enough to get the government to agree to allow
him to plead to a misdemeanor instead of a felony. . . .  Until my client's uncertainty about how
to proceed is resolved it is very difficult for me to prepare and submit a sentencing memorandum
on his behalf."); June 14, 2019 Def. Ltr. (Dkt. No. 42) at 1 (requesting one-month sentencing
adjournment because Commissiong and Jaata "are just getting under way with their
consultation"); July 18, 2019 Def. Ltr. (Dkt. No. 46) (requesting additional two-week sentencing
adjournment "to review discovery materials in order to facilitate continued conversations with
Mr. Jaata [as to whether he should move to withdraw his plea]"); Aug. 9, 2019 Def. Ltr. (Dkt.
No. 48) (requesting additional 45-day sentencing adjournment "to facilitate continued
conversations with Mr. Jaata[] regarding a possible motion to withdraw his guilty plea").

the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.").

Jaata's delay in moving to withdraw his plea weighed against his motion to withdraw his plea and likewise weighs against the instant motion for bail pending appeal.

### 2. <u>Innocence Claim</u>

Jaata's innocence claim is premised on his assertion that he lacked the intent to defraud the federal government, and merely "went outside of the letter of the regulations he was supposed to be following . . . to assist people in dire need." (Sept. 16, 2019 Motion (Dkt. No. 51) at 3)  In rejecting this argument as not credible, this Court noted that Jaata's claim of innocence is contradicted both by his sworn statements during the Rule 11 proceeding and by other evidence proffered by the Government. (Sept. 16, 2021 Order (Dkt. No. 64) at 17-20)

At his plea allocution, Jaata stated that, after he arranged for EBT cards to be sent to his home address and to other addresses under his control, he met with the beneficiaries at stores and "help[ed] them use their card[s]," including by allowing beneficiaries to use his Costco membership. (Plea Tr. (Dkt. No. 34) at 16-17)  "For doing this, the people sometimes gave [Jaata] a portion of what they bought [with their SNAP benefits], which [Jaata] kept for [his] own use." (<u>Id.</u> at 17)  SNAP beneficiaries also sometimes gave money to Jaata. (<u>Id.</u> at 18)  Jaata admitted that he knew that his conduct was wrong and stated that he was pleading guilty to the mail fraud charge because he was in fact guilty of that charge. (<u>Id.</u> at 18-19)

The Government's evidence also shows, <u>inter alia</u>, that Jaata (1) awarded benefits to an account for which his spouse accessed the benefits hotline; (2) was captured on surveillance video making purchases with EBT cards associated with some of the accounts he had set up; and (3) used an override feature when assigning benefits after his computer system

warned him about a discrepancy between the name and Social Security number of a purported applicant.  (Sept. 16, 2021 Order (Dkt. No. 64) at 20)

This Court concluded that the record was "more than sufficient to demonstrate that Jaata knew that the result of his scheme would be injury to the federal government."  (Id.)

In the instant motion, Jaata repeats his arguments that he was merely "assist[ing] individuals and families in need," and he contends that the Government's documentary evidence is subject to "competing interpretations."  (See April 11, 2022 Motion (Dkt. No. 86) at 6-7)  But Jaata does not dispute that he accepted money and other benefits from SNAP beneficiaries he was purporting to help.

In short, Jaata has not demonstrated innocence.

### 3.      Whether Jaata's Plea Was Knowing and Voluntary

This Court has previously rejected Jaata's arguments that he was not adequately informed about the consequences of his plea, and that his plea was the product of ineffective assistance of counsel.  (Sept. 16, 2021 Order (Dkt. No. 64) at 20-25)  In so ruling, this Court noted, inter alia, (1) that "Jaata was informed both during the Rule 11 proceeding and in his plea agreement that he faced a 'maximum term of imprisonment of 20 years'" (id. at 21 (citing Plea Tr. (Dkt. No. 34) at 10; Plea Agmt. (Dkt. No. 63) at 1)); and (2) that Jaata had been warned of the collateral consequences of "'[b]eing convicted of a felony,' including 'the loss of licenses or the right to possess a firearm,' as well as voting and immigration consequences" (id.).  At his plea allocution, Jaata confirmed that he understood the consequences of his guilty plea, and that he had reviewed the plea agreement in which the consequences of his guilty plea are likewise detailed.  (Id. 9-10; Plea Tr. (Dkt. No. 34) at 10-11, 13-14)

As to Jaata's ineffective assistance of counsel claim, this Court found "not credible" Jaata's assertion that he had not read his plea agreement or discussed it with his attorney, given Jaata's sworn statements to the contrary at his Rule 11 proceeding.  (Sept. 16, 2021 Order (Dkt. No. 64) at 24-25)  This Court further found that Jaata had been apprised of all the penalties he faced when he pled guilty.  (Id. at 25)  The Court also noted that "Jaata has made no attempt to argue that he would not have pled guilty had he known the consequences of his plea."  (Id.)  Finally, this Court acknowledged the "real benefit" realized by Jaata as a result of his guilty plea, including dismissal of four counts, acceptance of responsibility credit, and a lower Guidelines range.  (Id.)

In the instant motion, Jaata contends that this Court "never expressly asked Mr. Jaata if he understood that he was pleading to a felony and would thus have a felony conviction on his record."  (April 11, 2022 Motion (Dkt. No. 86) at 7)  But this Court informed Jaata that he was pleading guilty to an offense that carried a maximum sentence of twenty years' imprisonment.  (Plea Tr. (Dkt. No. 34) at 10; see also Sept. 16, 2021 Order (Dkt. No. 64) at 7)  And this Court alluded to the fact that the offense to which Jaata was pleading guilty was a felony.  For example, this Court advised Jaata that "[b]eing convicted of a felony may have . . . consequences" other than imprisonment and a fine, including

> the loss of licenses or the right to possess a firearm.  If you are a citizen of the United States, you could lose your right to vote.  If you're not a citizen of the United States, you will likely lose your right to remain in the United States, and you may be deported.  This is not a full list of the consequences of a felony conviction, but these are examples.

(Plea Tr. (Dkt. No. 34) at 11 (emphasis added); see also Sept. 16, 2021 Order (Dkt. No. 64) at 7)

In short, Jaata's argument that he did not understand that he was pleading guilty to a felony is frivolous, particularly in light of the master's degree he holds in criminal justice.

(Revised PSR (Dkt. No. 44) ¶ 60; <u>see also</u> Plea Tr. (Dkt. No. 34) at 4)  Jaata's plea was knowing and voluntary.

### 4.    <u>Prejudice to the Government</u>

The Complaint in this case was filed in November 2017, and the charges against Jaata are premised on conduct that took place as long ago as September 2014.  (<u>See</u> Cmplt. (Dkt. No. 1) ¶ 1)

The Government represents that

> in the months since the plea was entered [in November 2018], witness[es] and case agents involved in the investigation have moved on.  Indeed, with respect to the case agents principally involved with the investigation, the lead agent from the FBI has left the New York Field Office, and the primary attorney from [the New York State Office of the Welfare Inspector General] has left the agency entirely.  Witnesses whose memories may have faded in the time that has now elapsed have similarly moved on, and the Government is not presently in contact with a number of individuals in the Bronx, Pennsylvania, and elsewhere who[m] the Government had identified in the lead up to trial as potential witnesses.

(Oct. 21, 2019 Govt. Opp. (Dkt. No. 56) at 10)

This Court finds that the Government would suffer significant prejudice if Jaata's motion to withdraw his plea were granted.

*          *          *          *

Jaata intends to raise on appeal the same arguments that this Court rejected in its September 16, 2021 Order.  Jaata has provided no basis to disturb this Court's prior findings. The Court concludes that Jaata has not shown that his appeal raises a "substantial question of law or fact."

## **CONCLUSION**

For the reasons stated above, Jaata's application for bail pending appeal is denied.

Dated: New York, New York
       May 5, 2022

                                        SO ORDERED.

                                        Paul G. Gardephe
                                        United States District Judge